JOSEPH LANDA v. JACOB OBERT.

No. 119.

1. **Pleading — Evidence — Character.**—When character, from the very nature of the proceedings, is in issue, it is the general character as to some particular trait involved in the matter charged against the party, and this can only be evidenced by general reputation, and not by evidence of general bad conduct. An allegation of bad conduct against the party could not be proved, and it was useless to allege it, and no injury was done the party alleging it by striking it from the record.

2. **Same.**—Where the character of a party is in issue, evidence of character referring to a time subsequent to the act complained of is inadmissible.

3. **Same.**—In a civil suit, evidence of good character is not admissible to rebut imputations of fraud or misconduct, and it not being objected to does not authorize the other party to introduce improper testimony, when objected to.

4. **Evidence.**—Where the statement contained in the answer to an interrogatory is a repetition of former testimony, no injury can be done by excluding it.

5. **Same.**—Where part of the answer to an interrogatory of a party, though responsive, is no benefit to him, and the other part had already been given in testimony, its exclusion is not prejudicial to him.

6. **Same.**—The fee paid attorneys for effecting a settlement is a proper subject of inquiry, when all the facts connected with the so-called settlement are necessary to throw light upon the conduct of the parties thereto, the settlement being procured by threats.

7. **Interest.**—The Act of April 13, 1891, providing that when no rate of interest is agreed upon it shall be allowed at 6 per cent per annum, is not retrospective in its effect. It must be presumed to have been passed in contemplation of article 1, section 16, of the Constitution, which provides that no retroactive law shall be passed. When 8 per cent is the legal rate of interest at the time a right of action accrued, it attached to the demand sued on and continues to the time of trial.

8. **Charge of the Court** which instructs the jury, if they believe from the evidence, that in a settlement between plaintiff and defendant, plaintiff did not willingly or absolutely surrender his property to defendant, but there was to be a further investigation of matters between them, before it finally vested in defendant, is not obnoxious to the objection that every intendment in favor of the validity of the settlement should be indulged, when in another paragraph of the charge they were instructed that the settlement was good, as between the parties, and the burden of proving it should be set aside was upon the plaintiff.

Also, under certain facts, to find for plaintiff whatever of his claim, on an open account, he has proven to be due him, if anything, does not admit of the construction that it takes away from the jury the discretion of judging between conflicting evidence on that point.

9. **Compromise.**—The principle that the law favors the settlement of controversies by compromise, can have no application where there is no subject matter of compromise. The taking of one's property from him without consideration, and against his will, can no more be called a compromise than robbery.

APPEAL from Guadalupe. Tried below before Hon. GEO. McCORMICK.

*W. M. Rust* and *J. B. Dibrell*, for appellant.

*C. Upson* and *W. E. Goodrich*, for appellee.

NEILL, ASSOCIATE JUSTICE.—On January 9, 1871, Jacob Obert sued Joseph Landa in the District Court of Comal County, for the purpose of setting aside a settlement had with Landa on September 12, 1870, and for damages to his character. The venue of the case was changed to Guadalupe County. After several trials, the case is before us on its fifth appeal.

It is now rid of appellee's claim for damages by an amended petition filed on the 5th day of November, 1891, in which it is sought to set aside the settlement had with Landa on September 12, 1870, and to recover the sum of $1650, the principal due on two promissory notes made by the appellant to appellee, and surrendered by the latter to the former in said settlement, with interest from September 29, 1869, at the rate of 10 per cent per annum, and to recover the sum of $2340.75, a balance alleged to be due on account for 1861 days and nights work and labor performed by Obert for Landa, at his instance and request, in and about the vineyard, garden, saw mill, grist mill, premises, and business of appellant in Comal County and elsewhere, from the 21st day of January, 1864, to the 12th day of September, 1870, inclusive, together with interest thereon from January 1, 1865, at the rate of 8 per cent per annum, and to recover the sum of $1185 paid Landa on September 12, 1870, with interest at the rate of 8 per cent per annum from said date.

The grounds alleged by appellee for annulling the settlement, and for recovery upon his demands, are, that appellant conspired to cheat and defraud him, and to that end had employed spies to make false reports of the proceeds of appellant's mill, of which appellee was the manager, and retained lawyers of great repute, who, with appellant, charged him with embezzlement of the proceeds of said mill, and threatened him with the penitentiary, etc.; and that he was thereby overcome with fear and distress and rendered incapable of acting freely, voluntarily, or understandingly; and believing that he was at the mercy of and helpless in the

hands of Landa and his attorneys, to save himself from unlawful imprisonment and ruin, he unwillingly surrendered and receipted payment of said notes and account, and paid appellant and his attorneys $1185 in gold. That thereafter Landa refused to sign, as he had promised to do, a writing to the effect that if his innocence was discovered he would repay appellee what he had taken from him under said threats, with 10 per cent interest.

The appellant answered by denying all the allegations of fraud, conspiracy, the employment of spies to make false reports of the proceeds of the mill, of intimidation and duress; and charged, that Obert was conscious of his guilt, and after believing himself detected in his fraud, was glad to settle with appellant on any terms. That no threats were made to Obert, and that from indications at the time, he acted with a sedate mind and formed purpose to have the matter forever settled. He further averred, that before Obert was employed by him, during his employment, and since his discharge he was a dishonest man, guilty of divers acts of thievery, almost amounting to kleptomania. This last averment was by the court, on motion of appellee, stricken out.

The cause was submitted to the jury, and a verdict returned which is as follows:

" We, the jury, find for the plaintiff, Obert, the following amounts, viz.: An open account for work, $2340.75; interest for twenty-one years and 2 months at 8 per cent per annum, $3963.67; cash, $1185; interest 21 years and two months at 8 per cent per annum, $2006.60; note for $1400; interest twenty-two years and 1 month at 10 per cent per annum, $3087.80; note for $250; interest for twenty-two years, one month, eight and one-third days at 10 per cent per annum, $552.77; $14,786.59."

Upon this verdict judgment was rendered. The appellee entered a remittitur in the District Court of $23.50, it being the difference between 8 and 6 per cent interest per annum on the money received by appellant from appellee on the 12th of September, 1870, and on the account claimed by appellee from July 3, 1891, to the time said judgment was rendered. This appeal is from judgment entered upon said verdict.

The testimony on the main issues of this case is conflicting, but there is evidence to sustain the following conclusions of fact, which we find in deference to the verdict of the jury.

*Conclusions of Fact.*—1. On the 12th day of September, 1870, and for several years prior thereto, the appellant owned and operated a grist mill in Comal County, during which time the appellee was his miller and in charge of and managing it.

2. On said day the appellant was indebted to the appellee on an open account in the sum of $2340.75, and on two promissory notes, one

for $1400 and the other for $250, the first of which bore interest from October 7, 1869, at the rate of 10 per cent per annum, and the other interest at the same rate from the 29th day of September, 1869.

3. That on the 12th day of September, 1870, the appellant, for the purpose of defrauding the appellee, falsely and fraudulently charged the appellee with embezzling and fraudulently withholding from him proceeds of said mill to the amount of about $6000, and threatened him with imprisonment in the penitentiary if he did not reimburse him for the money he was so charged with fraudulently appropriating; and that for the purpose of extorting from appellee what he claimed as a settlement, he retained two eminent and influential attorneys, whom he had by false representation induced to believe that appellee was guilty of the offense charged against him, who, together with appellant, charged the appellee with embezzlement, and by their words and actions intentionally induced the appellee to believe that they were in possession of such evidence against him as would send him to the penitentiary for embezzling his employer's property, and that he could only avoid such imprisonment by settling with appellant on his own terms. That appellee protested his innocence to said attorneys, and offered to prove to them that he was not guilty of the offense charged against him. That said attorneys and their client refused to hear or consider any evidence of his innocence, but insisted upon such settlement.

4. That the appellee was at said time in no way indebted to appellant in any amount, and was not in fact guilty of embezzling appellant's money as charged, and that the demand on him on the part of Landa was fraudulent, but that appellee was induced to believe, and did actually believe, from the charge made against him by Landa and the dictations and actions of said attorneys, that if he failed to comply with their demand he would be prosecuted and imprisoned on the charge alleged against him, and that thereby his volition was overcome with fear and distress, and he was rendered incapable of acting freely and understandingly; and while in such mental condition and laboring under the dread of wrongful imprisonment, for the purpose of avoiding unjust prosecution and imprisonment, he yielded to such unjust demand of the appellant and surrendered to him the two promissory notes mentioned in our second conclusion, receipted them and the account, and also surrendered to the appellant $1185.

*Conclusions of Law.*— 1. Appellant's first assignment of error complains of the court's striking from his answer the allegation, " that plaintiff was, before his employment and since he was discharged by defendant, a dishonest man, and guilty of divers acts of thievery, almost amounting to kleptomania," and urges as a reason that the nature of the proceedings are such as to put in issue the appellee's character as to honesty. We

think that this allegation is irrelevant and impertinent, and was properly stricken from the record. If the contention of appellant, that the nature of the proceedings put appellee's character in issue, is correct, it was wholly unnecessary for appellant to make the allegation referred to, for appellee's character being in issue from the very nature of the proceedings, proof could be made on the issue without such allegation. When character, from the very nature of the proceedings, is in issue, it is the general character as to some particular trait involved in the matter charged against such party, and this can only be evidenced by general reputation, and not by evidence of general bad conduct. Greenl. on Ev., sec. 54. That appellee was "guilty of divers acts of thievery, almost amounting to kleptomania," was simply an allegation of bad conduct, and under the rule quoted could not be proved; and if it could not be shown, it was useless to allege it, and the allegation being of no avail, no injury was done the appellant by striking it from the record.

2. The appellant offered to prove by several witnesses that appellee, after he quit Landa's employ in the year 1873, stole a package of spool cotton containing a dozen spools of thread from one Webber, and hid it in his bosom; and by other witnesses, that shortly after he had been discharged by the plaintiff they detected him in stealing two boxes of cigars from Gus Conrad. Such proof was excluded by the court, and its action is made the basis of appellant's second and third assignments of error. What we have said in relation to the first assignment applies also to these two. Besides, even in cases where the character of a party is in issue, evidence of character, referring to a time subsequent to the act complained of, is inadmissible. The evidence was properly excluded. That the plaintiff was allowed to prove, without objection, that his reputation was that of a sober, industrious, and saving man, and that he attended to his work well and to the satisfaction of his employers, which would have been excluded if objected to—for in a civil suit evidence of good character is not admissible to rebut imputations of misconduct or fraud (Best on Evidence, section 262, note 1)—gives the defendant no right to introduce improper testimony when it is objected to.

3. The fourth assignment of error is entirely void of merit.

4. The following interrogatory was propounded to appellant by his counsel, viz.: "Please state whether at this interview near the mill, had with Obert, you or your attorneys, or either of them, made any threat to Obert of any character; or whether you, your attorneys, or either of them, made any threat to Obert at any time that day, before or after that day; or whether you, your attorneys, or either of them, at any time before the settlement was had with Obert, threatened Obert with imprisonment, or with confinement in the penitentiary, or with a criminal prosecution. Answer positively on this point." To which interrogatory he answered, "In answer to this question, will say, that I never at any time, before or

after the settlement with Obert, made any threat of any character to him or any one else, either about confinement in the penitentiary or with criminal prosecution, nor other threat; neither did my attorneys, Ireland and White, make any threat in my hearing.'' To which direct interrogatory the plaintiff, by his counsel, objected as being leading and calling for the conclusion of the defendant. The objection was sustained by the court and the interrogatory and answer suppressed. This action of the court is complained of by the appellant in his fifth assignment of error. The defendant, Landa, had already been permitted to state fully all the facts within his knowledge in regard to what was said and done by him and his attorneys in their interviews with Obert, and in his testimony said: ''As I have before stated, neither of my attorneys nor myself made any threats to Obert of any kind. No conversation in which I made threats to plaintiff occurred at the mill, or anywhere else, and the charge that I made threats is wholly false.'' This statement being in evidence for the consideration of the jury, the appellant could not have been injured by the exclusion of a similar one. The effect of striking out the answer was only to prevent a repetition of the statement he had made. Besides, we think it was for the jury to determine, from all the testimony in regard to the transaction inquired about, whether threats were made by defendant or his counsel to the appellee. We are of the opinion that this assignment of error is not well taken.

5. The sixth assignment of error is similar to and has as little merit as the one just disposed of.

6. The appellant had stated on his direct examination, '' that he did not owe Obert anything on account,'' and '' at the time of our settlement, in September, 1870, I did not owe Obert one cent on account; I paid him at the end of each week, as I did the rest of the hands, for help and labor at the mill; I kept books all the time, showing the amount paid my hands who were working at the mill, Obert included.'' Hence the striking out the cross-interrogatory and the answer thereto complained of in the seventh assignment of error, could not injure the appellant, the answer being substantially the testimony of the witness just quoted. Besides, the answer was not responsive, and was evasive of the interrogatory, and was therefore properly excluded.

7. The eighth assignment of error is as follows: '' The court erred in striking out and excluding from the jury the answer of the defendant given to cross-interrogatory as follows: ' Did you not make the following statement as a witness on the last trial of this case, having reference to the time of the settlement referred to in the twenty-eighth interrogatory, viz.: '' I do not know how my and Obert's account stands. I had made no settlement with him since 1865.'' To which he answered, '' I do not remember having made such statement, though I may have done

so, because I had made no final settlement with him, though I paid him regularly for his services."' The court excluded the answer on the ground that it was not responsive. The answer was responsive to the question and of importance to the defendant." We think all of the answer except the words, "though I paid him regularly for his services," was responsive to the interrogatory. None of the responsive matter was of importance or of any benefit to appellant, and its exclusion could in no way have been prejudicial to him. The other part of the answer had already been given in testimony by the witness.

8. It is claimed by appellant, in his ninth assignment of error, that the admission of evidence as to what fee he paid his lawyers to effect a settlement with plaintiff was a most flagrant wrong, and was calculated to and did unduly influence the jury. It was drawn out from Landa on cross-examination that he did not remember the amount he paid his lawyers, but he thought it was in the neighborhood of $1000. We think that all the facts and circumstances attending and connected with the so-called settlement between appellant and appellee were legitimate subjects of inquiry, and that it was proper to ascertain the extent to which the several parties were interested in effecting such settlement, for the purpose of throwing light upon their conduct towards the appellee at the time he claims they were all charging him with embezzlement and threatening him with the penitentiary. It could not be supposed that the attorneys' services were gratuitous, and we can not see how the fact that appellant paid them their fee could prejudice the jury either against them or their client.

9. In the third paragraph of its charge the court instructed the jury, if they found for plaintiff on his demand for money paid Landa and on his open account, they should find interest thereon at the rate of 8 per cent per annum from the date of the alleged settlement to the time of trial. The appellant complains of this, in his tenth assignment of error, that the Act of April 13, 1891, providing that when no specified rate is agreed upon by the parties, interest shall be allowed at the rate of 6 per cent per annum from and after the time when the sum is due and payable, is retrospective in its effect, and that no matter when the right of action accrued, the demand could bear no greater rate of interest than 6 per cent. The act can bear no such interpretation, for it must be presumed to have been passed in contemplation of article 1, section 16, of our Constitution, which provides that "No * * * retroactive law or law impairing the obligation of contracts shall be made." Eight per cent was the legal rate of interest at the time appellant's cause of action accrued, and it attached to the demands sued on, continued to the time of trial, and could not be abrogated by legislative enactment.

10. The court, in the fourth paragraph of its charge, instructed the jury as follows: "If you believe from the evidence, that in the settle-

ment made by the parties on September 12, 1870, Obert did not willingly or absolutely surrender his property to Landa, but that there was to be a further or future investigation of the matters between them upon the question of fact as to whether or not Landa was to return it before Obert's property was finally vested in Landa, and the evidence in the case fails to show that Obert did embezzle any of the proceeds of Landa's mill as charged by Landa, then in such case Obert would be entitled to recover in this action from Landa the property surrendered to him on September 12, 1870, with interest thereon as herein before stated, and you will say so; and whatever of his claim on the open account you may find he has proven to be due him, if anything." This part of the charge is complained of in appellant's eleventh assignment of error, upon the ground, that " it shifts the burden of proving Obert's guilt upon the defendant, when every intendment in favor of the validity of the settlement should be indulged; and that it is also erroneous in that it tells the jury that they must find for plaintiff on the open account the amount they may find he has proven, not leaving the jury the discretion of judging between conflicting evidence on the point." When this part of the charge is taken and considered in connection with the balance of the instructions given the jury, it is not obnoxious to either of the objections interposed. In the first paragraph the court instructs the jury, " that the settlement made between the parties on the 12th day of September, 1870, is on its face legal, and must stand as a finality and good as between the parties, and to find for the defendant, unless they believe from the evidence before them, under the law given in these instructions, that it was fraudulently obtained from plaintiff, and that it should be set aside and held for naught. And in this connection you are instructed that the burden of proof is on plaintiff to show cause why said settlement should be set aside." The part of the charge complained of does not admit of the construction claimed in appellant's second objection to it, for the jury are only authorized by it to find on the open account what, if anything, the plaintiff has proven.

11. The twelfth assignment of error complains of the court's refusing to give the following special charge asked by appellant's counsel, to-wit: " You are instructed that the law favors the settlement of controversies by compromise; and if you believe from the evidence that the plaintiff, Obert, gave his assent to the settlement in question because he was conscious of his guilt, or because he deemed it preferable to a law suit with defendant, Landa, you will find for the defendant." The principle, that the law favors settlements of controversies by compromise, can have no application to a case like this; for according to appellee's theory, which is sustained by the verdict, there was no subject matter for a compromise. Taking one's property from him without consideration and against his will can no more be called a compromise than robbery. Every-

thing contained in said special charge that was applicable was given in the following special instructions asked by appellant, viz.: " You are instructed, that if you believe from the evidence that plaintiff, Obert, made and entered into the agreement and settlement in question because he had wrongfully and without the consent of the defendant, Landa, taken hold of and appropriated money or property rightfully belonging to defendant, Landa, and that he agreed to said settlement without fraud, coercion, or compulsion, but in the exercise of his free agency in the matter, then and in such case you will find a verdict for defendant." " You are further instructed, that although Obert was induced to make the settlement sought to be set aside by the statements, conduct, and declarations of the defendant and his attorneys, he being overcome with fear, yet if you believe that Obert at the time of making such settlement made it in consequence of conscious guilt, or from fear of legal imprisonment, and in order to make reparation to Landa, whom he had injured, such settlement would be good, valid, and binding, and you should find a verdict for defendant."

12. The thirteenth and fourteenth assignments of error go to the sufficiency of the evidence to sustain the verdict. The evidence was conflicting; and as it is the exclusive province of the jury to weigh the testimony and pass upon the credibility of witnesses, and as there was evidence to sustain the verdict, we do not feel authorized to invade the province of the jury by disturbing it.

We are of the opinion that there is no error in the record requiring a reversal of the judgment of the District Court, and it is affirmed.

*Affirmed.*

Delivered December 13, 1893.

Motion for rehearing overruled.

Writ of error refused March 12, 1894.