SIMMONDS et al. v. ST. LOUIS, B. & M. RY. CO. (No. 8234.)

Court of Civil Appeals of Texas. San Antonio. June 12, 1929.

Rehearing Denied July 3, 1929.

Boone & Savage and Felix A. Raymer, all of Corpus Christi, for appellants.

Kleberg & North and M. G. Eckhardt, Jr., all of Corpus Christi, for appellee.

FLY, C. J. This is a suit by Simmonds and Perry for the value of a gray mule, alleged to have died from injuries received while being transported from Fort Worth to Driscoll. On the answers of a jury to special issues submitted by the county judge, judgment was rendered that appellants take nothing by their suit.

The jury found that the mule was delivered in good condition to the carrier in Fort Worth and was delivered to appellants in like condition at Driscoll, the point of destination. There was testimony to sustain the answers of the jury. The findings of the jury are not assailed by appellants; the only proposition urging the misconduct of the jury in arriving at their verdict.

In support of the motion for new trial, appellants had four of the jurors to testify, and there was very little conflict in their testimony. The motion for new trial alleged: That the court instructed the jury to answer the questions in order presented, and "that the jury in their retirement, contrary to the said instructions by the court, first discussed the general question of who was entitled to a recovery, or in other words discussed the case as though it had been submitted on a general charge, and upon such discussion decided to render a verdict and answer the questions

submitted in favor of the defendant. That after deciding to render a general verdict in favor of the defendant, the jury then answered the questions submitted in such a way as to sustain their general verdict. Which action of the jury was prejudicial to the plaintiff's interest, was misconduct on their part of a material nature, and was materially adverse to the plaintiff's rights, and therefore entitles him to a New Trial."

The allegation of negligence in this case was: "That the said mule was delivered to the defendant at Fort Worth, Texas, in sound condition, but defendant so negligently and carelessly transported said mule, that the said mule was injured in shipment so severely that he died as a result of such injuries negligently and carelessly inflicted by defendant. That the injuries and death of said mule were a direct and proximate result of defendant's negligence and carelessness." There was no direct proof of any negligence or carelessness upon the part of appellee or its connecting carriers, and such negligence cannot be found unless it be inferred from the fact that it received the mule in good condition and delivered it in bad condition. The only evidence for appellants was that of M. G. Perry, one of the appellants. He testified that the shipment of mules, of which the gray mule was one, arrived at Driscoll at 9 o'clock on Saturday night, March 29, 1924, and on Sunday, March 30, he went to the stockyards of appellee, and he and appellee's agent, C. S. Durham, "gave said mules a cursory inspection, and as a result of such inspection, plaintiff M. G. Perry, for Simmonds and Perry, signed a receipt for said mules, which receipt purported to show same received in good order." He stated that he afterwards returned for the mules and noticed on letting them out the gray mule "limped out of the pen, with a sort of stiffness in the loins," and then, after getting home, "went down," and they "were never able to get him to his feet again, and said mule died a few days later." No complaint was made to appellee's agent of the injuries to the mule at the time the injuries were discovered, but at some indefinite time after the mule got down or died, described as "a few days later." Perry stated that he notified the agent of the condition of the mule. He claimed to be a stockman of many years' experience with live stock. He claimed that he made a cursory examination of the mules, and yet he was able in that examination to discover some scratches on the legs of two mules, neither being the gray mule. He was sharply contradicted as to the condition of the gray mule when Perry drove him out of the pen. Perry went off to obtain assistants to assist in driving the mules home, but not one of them testified as to the condition of the gray mule and his death. Perry had no

corroboration whatever of his uncertain testimony. Durham, the agent, testified that the mules arrived on the night of March 27, and were at once unloaded, and on the next day, March 28, Perry came and examined the mules, which had been thoroughly examined by the agent, and found to be in good condition with the exception of scratches on the legs of a brown and a black mule. Durham swore that he was present when the mules were driven out of the pen by Perry, and all seemed to be in first-class condition, and that Perry did not call his attention to any injuries of the gray mule. A day or two after the mules had been driven off by Perry, he came to the station, paid the freight, and signed a receipt for the mules, which stated they were in good order with the exception of scratches on a leg of the brown and black mule. The receipt stated they were in good order on March 30; that is, three days after they had been unloaded. The mules were delivered by a connecting carrier to appellee at Sinton, in good condition, on the morning of March 27, and left at 10:40 of that morning, and that night, at 9 o'clock, arrived at Driscoll, where they were promptly unloaded. The uncontradicted evidence showed that the mules were in good condition when they got to Driscoll, and that there had been no rough, violent, or unusual jerking or jolting of the car between Sinton and Driscoll. This testimony was given by the conductor, and that the car containing the mules was under his immediate supervision all the way. He swore positively that the car was not handled at any time so as to injure any of the mules. He inspected the mules when they reached Driscoll and when they were unloaded. This is a fair summary of the evidence.

Under the uncontradicted facts, we conclude that no other verdict could reasonably have been reached by the jury. None of the salient points in the testimony of the two witnesses for appellee were assailed by Perry, the sole witness for appellants. He did not claim that the agent was not present when he drove the mules out of the pen and discovered the injury to the gray mule, and does not claim that he said anything about the injury at the time, and until several days afterward. If the mule was injured, it must have been while in the pen, for it was shown beyond doubt that he was in good condition when he reached Driscoll, when he was unloaded, and next morning when inspected by the agent and Perry. The latter does not deny that he signed the receipt after he had carried the mule home, and yet that receipt states he was in good condition. It is admitted that the mule was in good condition when delivered to appellee at Sinton, and the uncontradicted evidence shows that he was in good condition when unloaded at Driscoll and when inspected in the pen next day There was but one answer that could

be given to the fourth issue, as to the condition of the mule when delivered to appellants at Driscoll, and that answer was given by the jury. It is not contended that the verdict and judgment were not fully supported by the evidence.

■■■ The only assignment of error and the one proposition thereunder attack the verdict on the ground of misconduct of the jury. It is clear from the testimony of the four jurors whose evidence was taken, that the jury, before answering any question, had reached the conclusion that appellants should not recover and determined that the fourth question, the only one about which there was any dispute, should be answered so as to prevent a recovery on the part of appellants. That, under some of the decisions of the Commission of Appeals, and perhaps other courts, was misconduct on the part of the jury, but it should not work a reversal unless the misconduct materially affected the verdict and caused a miscarriage of justice. There is not one single circumstance in the case that tends to show that such misconduct affected the answer to the fourth issue, which was sustained by all the testimony on that point. No other answer could have been sustained by a court, and consequently the misconduct of the jury, if it be misconduct, is purely an academic question, a mere abstraction. No verdict sustained, as this one is, by an overwhelming preponderance of the evidence, should be disturbed upon abstractions as filmy and immaterial as the fabric of a dream. The jurors had but one question to determine, Was the mule delivered in good condition to Perry? They admitted that they took that question up with the opinion that the mule had been so delivered, and to say that they and appellee should be penalized because they had enough intelligence to know that such safe delivery precluded recovery would be to put a premium on stupidity and render a jury trial a farce and a laughing stock.

■ It will be remembered that no testimony other than that offered on the trial was considered by the jury. No preconceived opinions of jurors were given to the jury, and the "height and front of their offending" was that the evidence was so full and convincing that each one went into the jury room with the conviction that appellants should not recover. This righteous conviction created by the testimony should not invalidate their verdict. The recent case of Railway v. Cole, decided by the Commission of Appeals on writ of error from this court [14 S.W.(2d) 1024, rehearing denied 16 S.W.(2d) 534], shows an adhesion to the rule so long established by the appellate courts of Texas, of confiding in the sound discretion of the trial courts in cases of alleged misconduct. No verdict of a jury should be set aside on the ground of some technical violation of a stat-

ute, when the ends of justice and right have been attained.

It should ever be kept in mind that article 2234, Revised Statutes 1925, while still retaining that vicious innovation of permitting jurors to testify and discredit their own verdict, yet also retains the provision that the new trial on such testimony shall be granted if the "misconduct proved, or the testimony received, or the communication made, be material." That is the saving clause of the statute of 1905, which first authorized jurors to "befoul their own nest" by testifying to their own violations of duty.

The jury may not have obeyed the very letter of the law in this case, but they gave an honest reasonable answer to the evidence, and, looking at it through the glasses of reason and common sense, we feel we are not licensed to disturb the verdict.

The judgment will be affirmed.