## FORT WORTH WELL MACHINERY & SUPPLY CO. v. WAGGOMAN et al.*

### No. 12648.

Court of Civil Appeals of Texas. Fort Worth.
March 12, 1932.

Rehearing Denied May 14, 1932.

Second Rehearing Denied June 18, 1932.

McLean, Scott & Sayers and Templeton & Templeton, all of Fort Worth, for appellants.

J. W. Stitt, of Fort Worth, and John Morison, of Tyler, for appellees.

BUCK, J.

Charles A. Waggoman and the trustee of his estate, Finis E. Morgan, filed this suit against the Fort Worth Well Machinery & Supply Company, a corporation, and H G. Parr, its director, secretary-treasurer, and general manager, and against W. B. Brown, its director, vice president, and sales manager, alleging that the defendants had, on or about December 20, 1929, taken said Waggoman into their custody and falsely imprisoned him in a private room at the Texas Hotel, and by threatening and continuously intimidating him, compelled him through fear and distress of mind to sign a purported confession of theft of $9,000 from defendants, and to execute to defendants a note for $7,500 and a deed of trust on Waggoman's property to secure the same. Plaintiff alleged that said note and deed of trust had been executed by duress and force, and prayed judgment against the defendants for a cancellation of said note and deed of trust, and for actual and vindictive damages.

Defendant answered by a general demurrer and a general denial, and also filed a cross-action alleging that the said note and deed of trust were valid, and prayed for judgment on said note with foreclosure of the deed of trust, and that while Waggoman was in defendants' employ he had been selling their goods at the factory and keeping the money, and had defrauded defendants of $7,500 and more, and that he had confessed to said defalcation and embezzlement. Defendants further pleaded that as timekeeper for the defendants Waggoman knowingly, fraudulently, and falsely turned in time for workmen which they had not earned, and through such false reports had secured for such workmen unearned pay for such time falsely and fraudulently reported to the amount of an additional $1,500. Defendants prayed for judgment and foreclosure on the $7,500 note and mortgage, and also for their alleged damages on account of this alleged dishonest conduct of Waggoman.

Plaintiff filed a supplemental petition, and in addition to a general denial of all allegations in defendants' cross-action, pleaded that the note and deed of trust were void, because procured by fraud and duress and also because the property being held by Morgan as trustee, Waggoman had no power to encumber it, and pleaded further that Waggoman had not withheld any money from any sales of defendants' goods, except $13.20, which he had not had an opportunity to deliver when his false arrest occurred. He tendered the $13.20 into court.

The cause was tried by a jury, upon special issues submitted, which, together with the answers thereto, are as follows:

"1. Do you find and believe from the evidence that on the occasion in question in the defendant, by its agents or servants falsely imprisoned the plaintiff, Chas. Waggoman, after the said Waggoman arrived at the Texas Hotel on the occasion shown in the evidence? Answer: Yes.

"2. Do you find and believe from the evidence that at the time the note and deed of trust introduced in evidence before you was executed by the said Chas. Waggoman that the said Chas. Waggoman was 'falsely imprisoned', bearing in mind the definition given en you in connection with special issue No. 1? Answer: Yes.

---

"3. How much money, if any, do you find and believe from the evidence Chas. Waggoman received into his possession during the time he was employed by them for merchandise sold by said Fort Worth Well Machinery & Supply Company which he, the said Waggoman did not turn into the said Company? Answer: $13.20.

"4. Do you find and believe from the evidence that at the time the plaintiff Chas. Waggoman executed the note and deed of trust in question in this case that he was caused to execute said instruments by reason of any threats, if any, or intimidation, if any, on the part of the defendant, its agents or servants, which amounted to a forcible restraint of the free exercise of his will? Answer: Yes.

"4–a. Did the plaintiff, Charles A. Waggoman at the time he executed and delivered the note and deed of trust in question, do so voluntarily and of his own free will and accord? Answer: No.

"5. Do you find and believe from the evidence that the plaintiff, Chas. A. Waggoman, sustained any damage by reason of having been falsely imprisoned, if you have so found, on the occasion inquired about in special issue No. 1? Answer: Yes.

"6. How much damage, if any, do you find and believe from the evidence the plaintiff Chas. Waggoman suffered as a direct and proximate result of his false imprisonment if any, you have found, on the occasion inquired about in special issue No. 1? In answering this question the court instructs you that you may allow the plaintiff such sum of money, if any, as if paid now in cash you find and believe from the evidence will reasonably and fairly compensate the plaintiff Chas. Waggoman for any mental anguish, if any, or humiliation, if any, or impairment of reputation, if any, endured or sustained by the plaintiff, Chas. Waggoman, as a direct and proximate result of having been falsely imprisoned, if you have so found, on the occasion inquired about. Answer: $2500.00 damages.

"7. Do you find and believe from the evidence that the defendant by and through its agents and servants acted with malice in falsely imprisoning the plaintiff, Chas. Waggoman, if you have found that he was falsely imprisoned? Answer: Yes.

"8. Do you find and believe from the evidence that any amount of exemplary damages should be assessed against the defendant in this case? As an aid or guide to you in answering this question, the court charges you that exemplary damages are damages which may be allowed by the jury where a party has acted with malice. Answer: Yes.

"9. What amount of exemplary damages, if any, do you find should be assessed against the defendant company in this case? Answer: $2500.00."

Judgment was rendered for plaintiff, canceling the note and deed of trust and for $2,500 actual and $2,500 exemplary damages. From this judgment the defendants have appealed.

Opinion.

The fourth proposition complains of the admission of the testimony of D. S. Raines, F. A. Hall, John J. Winter, Mrs. F. A. Hall, Frances Ochs, Joe Arnold, and Mrs. S. R. McMullen, to the effect that they severally knew the general reputation of the plaintiff Waggoman in the community where he lived, for honesty and fair dealing, and that his reputation was good; also, that they knew his general reputation in said community for truth and veracity, and that it was good; also, that his character was that of a passive and submissive man who was easily influenced by others; and that his mind was more like that of an immature boy than that of a man.

Appellee urges that the only witness, the admission of whose testimony is complained of in the bill of exceptions, is Miss Ochs, and that the appellant has waived any complaint of admission of testimony of any other witness on this matter. But we think that all of this testimony was admissible on the ground that the cross-action involved an attack on the honesty and fair dealing, and the truthfulness of the plaintiff, and plaintiff pleaded that Waggoman was a young man scarcely more than a boy in years or experience, discretion, judgment, and wisdom, and that he was greatly frightened, overawed, and intimidated by the defendants' conduct, which caused Waggoman great fear of injury to his person, reputation, business, and social standing, etc. We believe that the testimony complained of was admissible as primary and direct evidence on the question of Waggoman's disposition and mental capacity, and also the testimony as to the truth and veracity and honesty and fair dealing of the plaintiff was admissible on those issues. When character, from the very nature of the proceedings, is in issue, it is general character as to some particular trait involved in the matter charged against such party, and this can only be evidenced by general reputation, and not by evidence of general bad conduct. Landa v. Obert, 5 Tex. Civ. App. 620, 25 S. W. 342, writ of error refused, 93 Tex. 712. Where the defendant's character for honesty is in issue, he may show that his reputation was good, and that he was considered upright and honorable. Largent v. Beard (Tex. Civ. App.) 53 S. W. 90. Where the credit of a witness has been impeached by proof that he made a statement to a witness, contrary to what he had testified to on the trial, it is competent to admit evidence of

**308**

his general good character for truth and veracity. Burrell v. State, 18 Tex. 713. We think all of this evidence was admissible and the assignment is overruled.

The fifth assignment is: "The court erred in refusing to give to the jury the peremptory instruction requested by the defendants to return a verdict in their favor."

We think the plaintiff's evidence was ample to establish a prima facie showing that the defendants had been guilty of the allegations made by the plaintiff.

The sixth assignment of error complains of the giving, over defendants' objection, of special issue No. 1, as follows: "Do you find and believe from the evidence that on the occasion in question, the defendant, by its agents or servants falsely imprisoned the plaintiff, Chas. Waggoman, after the said Waggoman arrived at the Texas Hotel on the occasion shown in the evidence?"

The definition of "false imprisonment" is in accord with the definition given in article 1169 of the Penal Code, which is as follows: "False imprisonment is the wilful detention of another against his consent and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper."

■ Under the twenty-sixth proposition it is urged that the jury were guilty of misconduct. R. E. Caswell, a juror, testified on a motion for new trial that when the jury retired they voted on how many of the jurors were in favor of the plaintiff and how many were in favor of the defendant, and that eight of the jurors voted in favor of plaintiff, two in favor of the defendant, and two voted both ways. That he was one of those who voted both ways, because he believed that the plaintiff should not have everything that he was asking for. The juror Wayman, foreman, testified generally to the same effect, as to the conduct of the jury in voting on how many of the jurors were for the plaintiff and how many were for the defendant.

In McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, 217, by the Commission of Appeals, the court said: "We therefore conclude that, since it is undoubtedly error for the jury to first agree on the result they wish to accomplish by their answers, and then designedly frame said answers so as to accomplish such result, it is reversible error for an attorney to make an argument to the jury which is calculated to cause them to do the very thing that the law prohibits. In the case at bar we are convinced that the argument set forth in the certificate of the Court of Civil Appeals, though made in good faith, was calculated to cause the jury to disregard their obligation as jurors to answer each question separately, truly, and distinctly, and amounted in law to an appeal to the jury to designedly agree on a result and so form their answers as to accomplish such result."

The very reason for the submission of a case on special issues is to enable the jurors to find the facts irrespective of the result on the judgment to be determined by the court, and where jurors disregard this purpose, and vote on the question as to how many are in favor of the plaintiff and how many in favor of the defendant, we think that such action is reversible error.

In Simmonds v. St. L., B. & M. Ry. Co., 29 S.W.(2d) 989, 990, by the Commission of Appeals, it is said: "The courts of this state have held, and it now seems to be the settled rule, that the purpose of article 2189 is to prevent a jury from first determining that they will give a party to the suit a verdict, and to then frame their answers so as to carry out their agreement. That the principal object in submitting a case to the jury upon special issues is that they should be removed from any bias or prejudice in favor of or against the parties by reason of the effect of their answers," citing cases. Even though the testimony of all the other members of the jury, except that of Hammon, showed there was no misconduct on the part of the jury, yet, since the testimony under all the decisions, the Court of Civil Appeals [18 S.W.(2d) 845] was authorized to conclude, in passing upon the sufficiency of testimony on this subject, as it did, in effect, that the trial court was not authorized, under the testimony, to reach the conclusion it did on this matter, it being one of fact.

The Supreme Court of this state, in Casstevens v. T. & P. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 639, 73 A. L. R. 89, speaking through Justice Greenwood, has approved the following rule as stated by the Supreme Court of Minnesota in Woodbury v. City of Anoka, 52 Minn. 332, 54 N. W. 187: "Where the misconduct may have had an effect unfavorable to the defeated party, the other party may be permitted to show that in fact it did not have such effect. But that would have to appear very clearly,—so clearly as to leave no doubt as to the fact. When it may have had an unfavorable effect, it would be unsafe to allow any speculation whether in fact it did or not."

Judge Greenwood, in the Casstevens Case, quotes with approval from Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, the following: "That whenever 'it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge;

If, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts.'"

It is urged by appellee that the foreman Wayman stated that the vote was a "straw vote" to save time and see the attitude of the jury and then start to working the thing out and then agree after everyone knew what the entire jury's opinion was. That after this "straw vote" was taken, the foreman read the charge and each special issue separately and the jury voted on each issue submitted. That the foreman then took up the charge again and read each question and each answer of the jury and asked each juror if that was his vote, and each juror agreed to that vote. That the record does not disclose that the fact that the jurors took this "straw vote" had any influence on the determination of the verdict returned, nor caused the jury to answer any question favorable to the plaintiff; that by the testimony of the jurors the appellee has shown beyond a reasonable doubt that no injury was done the appellant by the action of the jury in taking the "straw vote." We think it is evident that the jury wanted to know how many of the jurors were in favor of the plaintiff and how many were in favor of the defendant, and that they voted on this question; the final vote showing that all of them were in favor of the plaintiff.

In Conlisk v. Bender (Tex. Civ. App.) 245 S. W. 941, it is said: "For a jury to first determine that they will give a plaintiff a verdict, and to determine the amount before they have answered the special issues, and to then frame their answers so as to conform to such finding, is such misconduct as requires a reversal of the case. The jury should answer special issues as they find the facts to be from the evidence, without regard to its effect upon the judgment to be rendered in the cause. The principal object in submitting a question to a jury upon special issues is that they should be relieved from any bias or prejudice in favor of or against the parties by reason of the effect of their answers, and that they should answer each question truly as they find the fact to be from the evidence in reference thereto. Clearly this was not done in the instant case."

In City of Waco v. Rast, 2 S.W.(2d) 563, 565, by the Waco Court of Civil Appeals, it is said: "The undisputed evidence shows such misconduct on the part of the jury trying this case and renders it reasonably doubtful whether the verdict returned was affected thereby to appellant's prejudice. [Citing cases.] The fact that each of the jurors testifying declared that he did not answer any issue submitted other than as he thought the same ought to have been answered under the evidence, and that he did not know of any other juror who did so, is not sufficient to rebut a reasonable doubt as to whether the verdict of the jury was affected by such misconduct. * * * G. C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 278 S. W. 839, citing Moore v. Ivey, supra. Testimony of jurors minimizing the effect of their misconduct is given but little weight in determining whether their verdict was affected thereby," citing cases.

It is the settled law of this state that if upon a consideration of the whole of the pertinent record bearing on the issue of misconduct it is reasonably doubtful whether the misconduct affected the verdict in a material way, the verdict will be set aside and a new trial granted. Bradshaw v. Abrams, 24 S.W.(2d) 372, by the Commission of Appeals.

We are of the opinion that upon the admitted facts misconduct of the jury is shown, and that the judgment should be reversed and the cause remanded.

### On Motion for Rehearing.

PER CURIAM.

Since the rendition of the judgment of this court in accordance with the opinion filed by Associate Justice BUCK (now deceased), we have discovered the decision of our Supreme Court in Grant v. Pendley, 39 S.W.(2d) 596, 599, which was not cited in briefs of counsel nor referred to in support of appellant's motion for rehearing. In that case it was expressly held that testimony of general character for honesty and fair dealing and for truth and veracity was not admissible in behalf of one who was charged with perpetration of a fraud in inducing the execution of deeds to lands by the other party who had introduced no testimony on the issue of character in either of those respects. In that opinion there is an extended review of authorities on the question and the decision announced was in conformity with the great weight of authority throughout the country; the conclusion so reached being as follows: "We therefore announce the rule to be that supporting evidence of good character, either for truth and veracity or honesty and fair dealing, should only be admitted in those cases where the nature of the action directly involves the character of a party, where a witness has been impeached, or where a party by his pleading or evidence charges his adversary with the commission of a crime involving moral turpitude."

It was noted in that opinion that the decisions in this state are somewhat in conflict on the question. The court then held that the decision in Texas & P. Ry. Co. v. Raney, 86 Tex. 363, 25 S. W. 11, in which it was held that the plaintiff was entitled to intro-

duce testimony showing that his reputation for honesty and fair dealing was good, following a question propounded to him by counsel for the defendant as to whether or not he had forged a doctor's certificate pertaining to his physical condition, was obiter and was contrary to the great weight of authorities. Therefore, the decision in the Grant v. Pendley Case has the effect also to overrule several decisions of our courts of appeal which followed the Raney Case, in some of which writs of error were refused by our Supreme Court. Furthermore, the moral turpitude of the act of embezzlement is of like character and no more reprehensible from the standpoint of honesty and fair dealing than the act of defrauding another of his lands by willful misrepresentations inducing the execution of deeds of conveyance thereto; which was the controlling issue in Grant v. Pendley, supra.

As shown by bills of exception, after plaintiff had introduced his testimony and had rested, and after defendant had presented evidence in defense of plaintiff's cause of action and in support of its cross-action and had rested, the plaintiff, in rebuttal of defendant's defense and of its cross-action, introduced six witnesses, namely, F. A. Hall, John J. Winter, Mrs. F. A. Hall, Miss Frances Ochs, Joe Arnold, and Mrs. S. R. McMullen; each of whom, after proper qualifications, testified that plaintiff's general reputation in the community in which he lives for truth and veracity and for honesty and fair dealing was good. And further testimony of each of those witnesses was to the effect that plaintiff did not possess the wisdom and sagacity of a person of mature years, and was of a passive and submissive nature and sometimes easily influenced by others.

The defendant had not introduced any testimony attacking the plaintiff's general character in any of the respects above mentioned, and the objection to all the testimony referred to above was made upon that ground, and upon the further ground that it was irrelevant, immaterial, and prejudicial.

Plaintiff's character for honesty and for truth and veracity and for being of a passive and submissive nature, easily influenced by others, was not directly involved in plaintiff's suit, nor in the defendant's defenses thereto or in its cross-action.

The gist of plaintiff's cause of action was to recover damages for an alleged illegal and wrongful arrest; and to rescind a mortgage lien executed by him upon allegations that his execution thereof was induced by the arrest and by wrongful intimidation and coercion exerted upon him by the defendant, its agents and servants, at the time of the arrest. His further allegations that he was innocent of the charge of embezzlement were incidental only to the main issues; they did not determine the character of plaintiff's cause of action. And the same can be said of defendant's special answer alleging the truth of the charge of embezzlement in defense to the main issues. Indeed, proof of guilt of that charge would have been admissible under the plea of general denial, without any special plea as a basis therefor. And testimony that plaintiff confessed his guilt of embezzlement when charged therewith was introduced by defendant as an admission against interest in rebuttal of plaintiff's testimony already given that he was innocent of the charge. Hence the rule that testimony to the good reputation for truth and veracity of a witness who is not a party to the suit may be introduced as supporting evidence of his credibility, when the same has been impeached and after a proper predicate has been laid therefor, has no application here. And, manifestly, the charge of embezzlement was no part of defendant's cross-action for a foreclosure of the mortgage lien which plaintiff sought to cancel.

Accordingly, the conclusion reached on original hearing that the testimony of the six witnesses referred to above was admissible is now withdrawn, and in lieu thereof, we conclude that the assignments of error complaining of the admission of that testimony should be and they are now sustained. And this ruling is a further reason for reversal of the judgment of the trial court, additional to the conclusion shown in the original opinion that there was misconduct of the jury requiring a reversal.

It follows, therefore, that appellant's motion for rehearing upon the point above discussed must be sustained.

Appellee has also filed a motion for rehearing in which it is strenuously insisted that we were in error in sustaining the assignment presenting the contention of misconduct of the jury. One point is especially stressed, and that is that notwithstanding the showing that the jury, before attempting to answer any of the special issues, took a vote to determine whether or not plaintiff was entitled to recover and the ballots cast by eight of them were in the affirmative, yet no juror testified that they then attempted to answer the special issues so as to accomplish such a result, as was true in some of the cases cited. However, we believe that the absence of such a showing is not an answer to the assignment, since the votes first cast in favor of the plaintiff for a recovery were reasonably calculated to influence the further findings on the special issues; and in the absence of a clear showing and beyond a reasonable doubt that it did not have that effect misconduct of such a character as to vitiate the verdict was established. Indeed, as held in Texas & P. Ry.

Co. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950, and other cases therein cited, the presumption of harmful effect of misconduct cannot be overturned by the most emphatic denials of the jurors to the contrary.

We have duly considered all other points presented in appellees' motion for rehearing, and for the reasons stated in the opinion on original hearing without the necessity of further discussion, said motion for rehearing is in all respects overruled.