**TUMLINSON v. SAN ANTONIO BREWING ASS'N et al.**

No. 11271.

Court of Civil Appeals of Texas. San Antonio.

March 24, 1943.

Rehearing Denied April 21, 1943.

Schlesinger, Schlesinger & Goodstein and T. P. Hull, all of San Antonio, for appellant.

House, Mercer, Edwards & Irvin, of San Antonio, for appellees.

NORVELL, Justice.

Joel Tumlinson, plaintiff below, appeals from a judgment that he take nothing of his action against San Antonio Brewing Association and its employee, Gilford E. Dyal. Tumlinson was struck and severely injured by a truck owned by the Brewing Association and driven by Dyal. Appellant's complaint was founded in negligence. The case was submitted to the jury upon thirty-four special issues, and the jury's answers support the judgment rendered in that Dyal was absolved of the charge of negligence and Tumlinson was found to have committed a number of negligent acts which proximately caused his injuries.

Appellant first contends that he was entitled to a favorable finding upon the issue of discovered peril as a matter of law. The question of the applicability of the doctrine of discovered peril generally presents fact issues for a jury and the general rule holds good in this case.

Tumlinson was attempting to cross a street in the middle of the block when he was struck by the truck. This act of appellant was negligent according to the jury findings. Apparently Dyal, the driver of the truck, saw Tumlinson prior to the time the truck collided with him. The jury, however, found that Dyal did not discover the perilous position of Tumlinson in time to avoid injuring him by the use of any one of the means at his disposal. The evidence as to Dyal's actions im-

mediately prior to the collision, as well as to the exact position of the truck at that moment was conflicting. Dyal testified that he put on his brakes immediately when he saw Tumlinson in the street ahead of him. He did not sound his horn, but the jury expressly found that his failure to do so was not negligence. In this state of the record we must hold that appellees' liability to appellant was not established as a matter of law under the doctrine of discovered peril. The jury evidently believed Dyal's testimony to the effect that he did use one of the means at his disposal in an attempt to avoid the collision, namely his brakes. As to the horn or warning device, the other suggested means of avoidance, the rule applicable may be stated as follows: A who discovers B in a perilous position as a result of B's negligence is, nevertheless, under a duty to use ordinary care to avoid injury to B. The standard of conduct required by the phrase, "ordinary care" is that of a person of ordinary prudence acting under the same or similar circumstances. It is not sufficient in itself to establish a party's liability under the doctrine, to demonstrate that had said party adopted a certain course of action, the injury or collision would not have occurred. Unless it can also be said that a person of ordinary prudence, under the same or similar circumstances, would have taken the action, liability under the doctrine does not attach. Despite various applications of the doctrine of discovered peril and rules similar thereto, the test of ordinary care as the measure of duty seems to be established without dissent. Davis v. Mann, 10 Mas. & W. 548, 152 Eng.Reprint, 19 Eng.Rul.Cas. 190; Surkey v. Smith, Tex. Civ.App., 136 S.W.2d 893, writ refused; annotation, 92 A.L.R. 47.

Upon the record before us, it can not be said as a matter of law that Dyal failed to use ordinary care in failing to sound his horn. This was a jury question.

Appellant next contends that the verdict of the jury is against the preponderance of the evidence to such an extent that improper motives, or prejudice on the part of the jury, must necessarily be inferred. In this connection, appellant emphasizes the jury's answers to the "discovered peril" issues and points out that the jury answered "none" to the issue inquiring as to damages sustained by the appellant, which was unconditionally submitted, and also failed to answer a question inquiring as to the amount of doctor and hospital bills incurred by appellant, although this issue was also unconditionally submitted. We have heretofore discussed the discovered peril issues, and hold that the jury's answers to said issues are not against the overwhelming preponderance of the evidence. It has also been held that the refusal of a jury to answer an issue inquiring as to the amount of damages sustained, or to answer said issue "none," is not reversible error when the jury's answers to other issues disclose that no judgment favorable to the injured party could have been entered upon the verdict. This is true even though the amount of damage issues were unconditionally submitted and the evidence shows conclusively that injuries were sustained. We overrule appellant's second contention. Southern Pine Lumber Company v. Andrade, 132 Tex. 372, 124 S.W.2d 334; Rogers v. Coca Cola Bottling Company, Tex.Civ.App., 156 S.W. 2d 325; Harrison v. Missouri, Kansas & Texas Ry. Co., Tex.Civ.App., 89 S.W.2d 455.

Appellant's remaining points relate to alleged jury misconduct. Rule 327, R.C.P. is applicable to the case. Since this rule makes a change in the practice as developed under the repealed statute, Article 2234, 1925 R.C.S., we briefly notice the development of the procedure relating to jury misconduct under prior statutes in order to ascertain the extent of the change effected by the rule.

At common law jurors were not allowed to testify as to occurrences in the jury room. "The permitting such evidence cannot be too strongly reprobated * * *." Mason v. Russel's Heirs, 1 Tex. 721, 726; Galveston, Harrisburg & San Antonio Ry. Co. v. Roberts, Tex.Civ.App., 91 S.W. 375.

In 1905, the Legislature provided: "Where the ground of the motion is on account of misconduct of the jury or the officer in charge or because of any communication made to the jury, or because the jury received other testimony the court shall hear evidence thereof, and it shall be competent to prove such facts by the jurors or others, by examination in open court; and if the misconduct proven, or the testimony received, or the communication made be material a new trial may in the discretion of the court be granted." Acts 1905, p. 21, Ch. 18, 29th Leg.

The above statutory enactment was carried forward practically unchanged as Article 2021, 1911 R.C.S.

In the Revised Statutes of 1925, the words "a new trial may in the discretion of the court be granted," were eliminated, although the wording employed seemed to imply that the trial court possessed some discretion in regard to the matter. The provision assumed the following form as Article 2234, 1925 R.C.S.:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material."

The present rule reads as follows: "Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

Shortly after the Act of 1905 became effective, Judge Fly, of this Court, expressed the fear that the novel mode of procedure introduced by the Acts of the Twenty-ninth Legislature would "be productive of no good results." Foley v. Northrup, 1907, 47 Tex.Civ.App. 277, 105 S.W. 229, 231. Twenty-two years later this same jurist spoke of various interpretations of the Supreme Court's decision in Houston & T. C. Railway Company v. Gray, 105 Tex. 42, 143 S.W. 606, as having "opened wide the box of Pandora." Giles v. Tyson, Tex.Civ.App.1929, 13 S.W.2d 452, 456, and also described the statute (as then interpreted) as "authoriz[ing] jurors to 'befoul their own nest' by testifying to their own violations of duty." Simmonds v. St. Louis, Brownsville & Mexico Ry. Co., Tex.Civ.App.1929, 18 S.W.2d 845, 848.

Since the advisability of the entire statutory procedure has been questioned by responsible jurists, it is not surprising that varied interpretations of the procedure and scope of authority of the various courts, both trial and appellate, are expressed in reported opinions. The opinion in Moore v. Ivey, Tex.Com.App., 277 S.W. 106, reveals a conception or viewpoint as to the most effective and satisfactory means of utilizing the jury as a part of our trial system, which differs widely from that evidenced by the writings of the late Chief Justice of this Court. A choice between the two conflicting philosophies, as well as an evaluation of the attempts of judges by application of various rules to correct jury "mistakes" by use of the statutory procedure involves a weighing of results obtained against disadvantages incurred. Such an examination is without the scope of this opinion. The books contain over two hundred cases dealing with the statutory procedure in which various ideas or conceptions have been propounded.

Prior to the adoption of Rule 327 the Supreme Court had succeeded in establishing order and definiteness in a confused field, albeit the practice so established was deemed unsatisfactory in a certain particular, as is evidenced by the change effected by the rule. We do not, however, attribute to the Supreme Court, by its adoption of Rule 327, an intention to abandon the gains in certainty heretofore made.

The later cases do not refer to the granting of a new trial as being within the discretion of the trial court. In Moore v. Ivey, supra, a rigid formula was adopted to determine whether or not a trial court had abused its discretion, and consequently the scope of discretion was so narrowed as to negative the existence of any discretion in the true sense of the term.

The rule under the statute and now under Rule 327, is that a question of whether or not jury misconduct actually occurred is a question of fact to be determined by the trial court subject to review by an appellate court in the same manner as any other question of fact. The question becomes one of law only when misconduct is established by undisputed evidence, or the evidence is such that reasonable minds can not differ as to the conclusion that misconduct has occurred.

Under the statute, the question of the materiality of the misconduct shown, as

well as the question of whether or not it appears beyond a reasonable doubt that no injury resulted to the complaining party was a question of law. Sproles Motor Freight Lines v. Long, Tex.Sup., 168 S. W.2d 642.

Under Rule 327, R.C.P. the question of the materiality of this misconduct shown (i. e., its tendency toward prejudice), as well as the question of whether or not it reasonably appears that injury probably resulted to the complaining party, is a question of law. It seems that the question of probable injury includes that of materiality so that in effect but one question is involved, that of probable injury, which is first determined by the trial court, and then upon appeal by the appellate court as a question of law, independently of the trial court's holding. Barrington v. Duncan, Tex.Sup., 169 S.W.2d 462.

Appellant's contentions as to jury misconduct present two matters for our determination.

First, it is asserted that some of the members of the jury decided to accept the answer to the first special issue as deciding who should win the case, the plaintiff or defendants. The issue inquired as to whether or not Dyal had the truck under reasonable control immediately prior to the collision. It is contended that after that issue had been determined several members of the jury answered the issues following in such a manner as to give a judgment to the defendants.

Appellant relies primarily upon Bradshaw v. Abrams, Tex.Com.App., 24 S.W.2d 372, 374, opinion by Commissioner (now Associate Justice) Critz, wherein it was held that even in the absence of an agreement among the members of the jury to first decide which side should gain the verdict and answer the interrogatories submitted accordingly, misconduct necessitating a reversal, was shown where it appeared that "several members of the jury attempted to answer the issues submitted to them with but one end in view, *as expressed in no uncertain terms throughout their long deliberations,* and in the testimony taken on the hearing of the motion, and that to accomplish a result [effect a decision in favor of a party] * * * regardless of how they found the facts to be." (Italics ours.)

Upon hearing of the motion for new trial in this case, appellant called four jurors and under the direction of the trial court four additional jurors were called. The jurors were interrogated again and again as to what transpired in the jury room, and all matters affecting their deliberations fully investigated. The record of these examinations takes up a large portion of the Statement of Facts. There is surprisingly little conflict of testimony except as to minor details and immaterial matters. It is safe to say that the majority of the jurors questioned knew that the answers made by them would result in a judgment for the appellees. Others had probably made up their minds tentatively at least prior to the deliberations in the jury room, that the appellees would, or should, win the lawsuit. There was also a great deal of discussion as to who "was to blame for the collision"; "whose fault it was," and the like. It seems probable that the whole case and its various aspects were discussed while the first special issue was being considered. The evidence falls far short of showing jury misconduct as a matter of law under the authority relied upon. Much of the testimony adduced was absolutely without probative force in that it related to the mental processes of a jury employed in arriving at a decision upon the issues presented, or was testimony that some particular act or occurrence did or did not affect a particular juror's verdict. Sproles Motor Freight Lines v. Long, Tex.Sup., 168 S.W.2d 642; Barrington v. Duncan, Tex.Sup., 169 S.W. 2d 462.

It can not be said from the admissible testimony as a matter of law that several members of the jury, or any one of them, determined to bring in a verdict for appellees regardless of how they found the facts to be. The trial court's implied holding that no misconduct occurred in the particulars urged must be sustained. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770.

The second ground of alleged misconduct relied upon has reference to the narration by the Juror Romel of an automobile accident in which he was involved. Romel admitted that in the jury room he related to the other jurors something about an accident which he, or his daughter, or a member of his family had. The juror did not remember very well what he had

actually said to the other jurors. Pawly, a juror, who testified upon the hearing of the motion for new trial, gave the following version of the incident:

"Q. During the discussion of the case did you hear Mr. Romel make any statement about any accident he was involved in at one time? A. Yes, I did.

"Q. What did he say? A. Well, he spoke of an accident where a colored man ran into him while he had stopped at a stop light, where the colored man tried to claim it was his fault, and it was more funny than anything else to me because he claimed he was standing still at the time it happened. That is the only thing I heard."

Another juror testified that "there was one man brought up just a slight example that an accident will happen, but I did not see anything in it."

█ The fact that Romel related some of the circumstances of another automobile accident during the jury's deliberations seems conclusively established by the evidence. The trial court evidently held that the record failed to show probable injury. We have arrived at a similar conclusion from our examination of the record.

█ In connection with the relating of the incident of the prior automobile accident by Romel, appellant asserts that inquiry was made of Romel on his voir dire as to whether or not he had an automobile accident and he answered that he had not. What took place on the voir dire is not disclosed in the Statement of Facts proper nor by a bill of exceptions. It is sought to be shown by the testimony of appellant's lawyers upon the hearing of the motion for new trial. We have serious doubts as to whether or not an occurrence upon the voir dire may be shown in the manner adopted in this case. The use of a bill of exception is patently preferable. However that may be, attorneys so testifying must be classed as interested witnesses, and therefore we can not say that the claimed occurrence took place in the face of the trial court's implied finding that it did not. Romel testified that he did not remember being asked whether or not he had been involved in an automobile accident upon his voir dire examination.

We have concluded that none of appellant's points discloses a reversible error

and an affirmance of the judgment appealed from is accordingly ordered.

On Motion for Rehearing.

Appellant's motion for rehearing is overruled. Booth v. H. P. Drought & Company, Tex.Civ.App., 89 S.W.2d 432.