**COCKBURN et al. v. IRVIN.**

No. 2827.

Court of Civil Appeals of Texas. Beaumont.
Nov. 14, 1935.

Supplemental Opinion Nov. 27, 1935.

Rehearing Denied Dec. 18, 1935.

Barkley & Webb, R. U. Culberson, and Wilmer & Hunt, all of Houston, for appellants.

Monteith, Neathery & Cutrer, of Houston, for appellee.

WALKER, Chief Justice.

This appeal was prosecuted from the district court of Harris county to the Galveston Court of Civil Appeals, and transferred to this court by orders of the Supreme Court.

We take the following statement of the nature and result of this suit, as tried in the lower court, from appellee's brief:

"This suit was tried upon Plaintiff's First Amended Original Petition and Defendants' Amended Original Answers.

"Plaintiff alleged in substance in his said petition that he entered into an agreement at the instance of the Defendant H. C. Cockburn, wherein Cockburn induced him to purchase 200 acres of land from one J. A. Platt upon the promise and agreement that he, Cockburn, would purchase a one-half interest in said land and that Cockburn would look after the handling of same and that Cockburn would see that he *received ½ of all the profits realized from said land.* That Defendant Cockburn represented to him that said land was rich in oil and it would make them a lot of money and alleged further that Cockburn reminded him of his ability to handle the land advantageously and further represented to him that he was giving him an opportunity to make a large sum of money; and that, relying upon the representations and statements of Defendant H. C. Cockburn, he purchased said land in his own name from J. A. Platt and paid $20,000.00 in cash and executed notes for $20,000.00. And that subsequently Cockburn reimbursed him for ½ of the cash paid and paid his ½ of the notes. That, relying on the promise and agreement that he would receive ½ of all the profits from said land, Plaintiff did everything asked of him by Defendant H. C. Cockburn; that he executed a lease and other instruments brought to him by Cockburn and relied on Cockburn to manage and handle said land. Plaintiff further alleged that Defendant H. C. Cockburn was the President and owner of practically all of the stock of defendant Cockburn Oil Corporation and inducing Plaintiff to purchase said land and in agreeing to share with Plaintiff ½ of the profits realized from

·said land that Defendant H. C. Cockburn was acting for himself and under the authority of and as the agent of Defendant Cockburn Oil Corporation, Smith & Gates Inc. and Erwin W. Smith and C. E. Gates. Plaintiff further alleged that the Defendants after having entered into said agreement with Plaintiff and after the purchase of said land included same in a block of leases of approximately 1225.76 acres of land and conveyed said block of 1225.76 acres of mineral leases to the Humble Oil & Refining Company for a cash consideration of $225,000.00. That the 200 acres of land which constituted the subject matter of the agreement between Plaintiff and Defendants constituted approximately ⅙ of the block of leases containing 1225.76 acres of land and that the Defendants did not apprize Plaintiff of the conveyance of the leases to the Humble Oil & Refining Company and the consideration received therefor and did not pay to Plaintiff his ½ of the profits realized from the leases of said 200 acres of land to the Humble Oil & Refining Company. That, as the 200 acres represented approximately ⅙ of the acreage in the block of leases, Plaintiff was entitled to ½ of ⅙ of the sale price of $225,000.00 collected by Defendants from the Humble Oil & Refining Company, which sum Defendants had failed and refused to pay plaintiff. Plaintiff further alleged that Defendants Cockburn and Smith & Gates Inc. and Erwin W. Smith and C. E. Gates agreed and conspired among themselves to induce the Plaintiff, acting through H. C. Cockburn, to enter into the agreement to purchase said 200 acres of land without any intention on their part to comply with the agreement to share with Plaintiff ½ the profits realized from the 200 acres of land and acting together conspired to defraud Plaintiff of his ½ of the profits realized from the lease of said 200 acres of land. Plaintiff also prayed for an accounting and for judgment ·for ½ of ⅙ of the profits realized from the sale of the lease of the block of 1225.76 acres of land; and prayed for the fixing of a lien upon said 200 acres of land to secure the payment of whatever judgment might be rendered in his favor.

"Defendants answered by general demurrer and general denial and plead the two and four year Statute of Limitation and plead notice to the Plaintiff of the contract to convey and the conveyance of this block of leases aggregating 1225.76 acres of land of which Plaintiff's 200 acres was a part to Humble Oil & Refining Co. and notice of the consideration received therefor; and denied that there was ever any agreement between Defendants and Plaintiff to share in the profits of the sale of the lease on said land and further denied that Plaintiff had ever asserted any claim to the profits from the sale of the lease until the date the suit was filed. Defendants plead that if it was found that Plaintiff was entitled to share in the proceeds from the sale of the leases that then Plaintiff should be required to share in the expense in securing said leases and alleged that Defendants had been caused to spend in excess of $75,000.00 in procuring said block of leases; and alleged that Defendant Cockburn Oil Corporation had been caused to spend in excess of $35,000.00 in connection with the assembling of the leases and geophysical and other work in connection with said block of leases and that this expense should be charged proportionately against the Plaintiff. Defendants further denied that they had entered into any joint adventure or partnership with Plaintiff or each other. Defendants Smith & Gates denied that they had any agreement with Defendant Cockburn and denied that he was their agent and denied that they had any knowledge of any representations made by Defendant Cockburn to the Plaintiff and plead that if any such representations were made they were made without their authority. Defendants Smith & Gates and Erwin W. Smith and C. E. Gates in their answer plead that if there was any judgment recovered against them that they should have judgment over against their co-defendants H. C. Cockburn and Cockburn Oil Corporation and asked in their prayer for such relief against their codefendants.

"The case was submitted to the jury by the Court upon special issues submitting the case from the viewpoint of both the Plaintiff and Defendants. The jury found all material issues in favor of the plaintiff and found the amount of profits, as defined by the Court, realized by the Defendants from the disposition of the 200 acres of land in question. Upon the answers of the Jury to said special issues the Court rendered judgment for Plaintiff against the Defendants in the sum of $15,-833.33 with interest from November 7ᵧ 1929, at the rate of 6 per cent per annum and fixed a lien upon the interest of the Defendants in the 200 acres of land in question to secure the payment of the

judgment. From this judgment of the Court the Defendants have perfected this appeal."

The following were the issues submitted to the jury, answered as indicated:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the defendant, H. C. Cockburn, at or prior to the time of the purchase of the 200 acres of land from J. A. Platt agreed with the plaintiff, W. H. Irvin, that if the said W. H. Irvin would join him (Cockburn) in the purchase of said 200 acres of land, that he, Cockburn, would share equally with the said Irvin the profits received from said land?" Answer: "He did."

"Special Issue No. 2. Do you find from a preponderance of the evidence that W. H. Irvin relied upon such agreement, if any, made by the said Cockburn?" Answer: "He did."

"Special Issue No. 3. Do you find from a preponderance of the evidence that W. H. Irvin was thereby induced to enter into an agreement with the said H. C. Cockburn for the purchase of the 200 acres of land from J. A. Platt?" Answer: "He was."

"Special Issue No. 4. Do you find from a preponderance of the evidence that there was an agreement entered into between the defendants H. C. Cockburn and C. E. Gates and/or Erwin W. Smith that they would share in the profits received from the 200 acres of land purchased by W. H. Irvin from J. A. Platt?" Answer: "There was."

"Special Issue No. 5. What profit, if any, do you find from a preponderance of the evidence, the defendant H. C. Cockburn and/or Cockburn Oil Corporation received from the sale of the 200 acres of land purchased by W. H. Irvin from J. A. Platt?"

"In this connection you are instructed that by the term 'profit' as used herein is meant the amount received from the sale of such 200 acres of land, after deducting all reasonable and necessary charges incident to the transaction." Answer: "$31,666.67."

"Special Issue No. 6. Do you find from a preponderance of the evidence that at the time of the conversation with W. H. Irvin relating to the purchase of the land by W. H. Irvin from J. A. Platt, and just prior to said purchase, the defendant H. C. Cockburn was acting under authority from Smith & Gates, incorporated, or Erwin W. Smith or C. E. Gates, for said Smith & Gates, incorporated and/or E. W. Smith or C. E. Gates, for said Smith & Gates, incorporated and/or E. W. Smith and C. E. Gates, as well as for himself?" Answer: "He was."

"Special Issue No. 7. Do you find from a preponderance of the evidence that the plaintiff, W. H. Irvin, knew prior to September 17th, 1931, that the 200 acres of land purchased from J. A. Platt by said Irvin had been sold by H. C. Cockburn and/or the Cockburn Oil Corporation to the Humble Oil & Refining Company?" Answer: "He did not."

"Special Issue No. 8. Do you find from a preponderance of the evidence that the plaintiff, W. H. Irvin, at any time prior to September 17th, 1931, knew of the consideration for said sale?" Answer: "He did not."

"Special Issue No. 9: Do you find from a preponderance of the evidence that the plaintiff, W. H. Irvin, at any time prior to September 17th, 1931, by the exercise of ordinary diligence, should have informed himself of said sale to said Humble Oil & Refining Company?" Answer: "He should."

### Opinion.

We overrule the contention that appellants were entitled to judgment on the jury's answer to question No. 9. This answer did not bar appellee's claim under the statute of limitation of two years, as contended for by appellants. Appellee's cause of action was based upon allegations of a joint adventure between him and appellant Cockburn and Cockburn Oil Corporation; his testimony fully sustained the allegations of his petition. The essentials of the joint adventure were submitted to the jury by the court's charge and found in appellee's favor. The following quotation from appellee's testimony, in our judgment, raised the issues of joint adventure sent to the jury:

"Mr. Cockburn came to my office and said, 'Mr. Irvin, I have found another oil dome near Mykawa, and there are 200 acres that I can't lease. I am going to buy it, and I want you to go in with me as a partner in this matter. It is a very valuable piece of oil land. There are domes underneath that. It will make a lot of money, probably make us a quarter of a million before the end of the year. It will take $40,000.00 to buy it. We can buy it at $20,000.00 cash, and make the other $20,000.00 payable one, two, three or four

years, $5,000.00 each year.' I told him, Cockburn, I would go in with him as his partner in this deal. He said, 'All right, I will give you my check for $10,000.00 and you buy it, because I don't want myself known in this transaction at this time. You buy it in your name.' He gave me a check for $10,000.00 and told me who to see— Platt. I went to see Mr. Platt and arranged to buy it. * * * When they reported to me that titles were good, I gave Mr. Platt a check for $20,000.00 and signed the notes. Four or five days afterwards, Mr. Cockburn came to me and asked me to give Smith & Gates a lease on the property for 5½ years. Now that was late in the evening. I was fixing to go home. I asked him to let me take the lease home and read it over. He said, 'It isn't necessary. I am your partner. I am certainly going to take care of my own interest and yours at the same time, because we are equal in this land, and you wouldn't understand it after you saw it. I am a practical man. We are partners. Go ahead and sign it, and go ahead, and I will take care of your interest.' I signed it and gave it to him. It was made to Smith & Gates. Then, a few days after that, I gave him a deed to a half interest.

"Q. Did Mr. Cockburn at the time that he proposed to you to purchase this land together—what did he say with reference to how you should share the proceeds of the property? A. We were to be equal partners in this 200 acres of land, whatever we got off of it, whatever the land made us, we would have fifty-fifty.

"Q. Did Mr. Cockburn use that term 'fifty-fifty' or did he not? A. My best recollection, he did. I know we were to be equal partners in everything that was produced on this land."

Mrs. W. H. Irvin, a witness for the plaintiff, testified as follows:

"You are Mrs. W. H. Irvin? A. Yes, sir.

"Q. The wife of W. H. Irvin? A. Yes, sir.

"Q. How long have you lived in Harris County? A. Between forty or fifty years.

"Q. You are well acquainted in Harris County? A. Yes, sir.

"Q. Do you recall a conversation that took place in April or May, 1928, between Mr. Irvin and H. C. Cockburn, in Mr. Irvin's office in the bank? A. Yes, sir. I was in there when Mr. Cockburn came in, and he came in and told Mr. Irvin that he had located a new oil field out here in Mykawa, and that he had brought Mr. Irvin an opportunity once before down in Fort Bend County, but Mr. Irvin didn't feel that he wanted to take advantage of that opportunity, so he was going to give him another one. So he said he had a chance to buy 200 acres of land out at Mykawa, and that if Mr. Irvin would go in partners with him that they could make a lot of money out of it, probably a quarter of a million, before the end of the year. So Mr. Irvin said, 'Well, Mr. Cockburn, we will just go in.' And so Mr. Cockburn said, 'Well, you don't understand the oil business and I do, and I will handle it for us, and whatever we make we will be equal partners and we will share equally whatever is made on this land.' "

The pleadings, evidence of appellee, and the verdict of the jury established a joint adventure between appellee and Cockburn and the Cockburn Oil Corporation, as that relation is thus defined by Griffin v. Reilly (Tex.Civ.App.) 275 S.W. 242, 246: "A joint adventure is defined to be a special combination of two or more persons, where in some specific venture a profit is jointly sought, without any actual partnership or corporate designation."

The same law of limitation governs a joint adventure that governs partnerships. Sanchez v. Dixon (Tex.Civ.App.) 59 S.W. (2d) 425. Article 5527, R.S., prescribes a limitation period of four years by one partner against another.

If we correctly understand appellants' brief, they urge their proposition of limitation upon their construction of the record that appellee and Cockburn, under the verdict of the jury, were not joint adventurers. On our conclusion of "joint adventure" Cockburn never did give notice to appellee of the termination of the adventure. Under appellee's pleadings and testimony, the joint adventure continued until this suit was filed; on that statement appellee's cause of action for settlement, that being the nature of this suit, for settlement and accounting, did not accrue until that time.

Appellants attack the jury's answer to question No. 7 as being without support. On our conclusion of "joint adventure," the answer to this question becomes immaterial, and for that reason we do not summarize the testimony on question No. 7, but in our judgment we say it has support.

■ There was no controversy as to the amount received by appellants from the sale to Humble Oil & Refining Company of the lease on the 1,226.76 acres of land, nor that the 200 acres of land in controversy was of equal value with the balance of the land. On this statement, appellants received from Humble Oil & Refining Company, as bonus on the 200 acres of land one-sixth of $225,000. The contract pleaded by appellee was that he was to receive one-half of all the profits made by Cockburn in handling this 200 acres of land. For emphasis, in our quotation above from appellee's statement of the case, we have written in italics his statement of the contract; we have carefully reviewed his pleadings, and have concluded that the contract plead by him was for one-half of the profits. By their answer appellants tendered the issue of profits, and pleaded the expenses incurred by them in handling this property. Appellee made no issue against this plea, except that of general denial; that is to say, he did not plead fraud against appellants in the charges made by them against the profits. The issue of profits was sent to the jury by question No. 5, with the accompanying charge, copied above in connection with this question. Appellants did not except to this charge as an improper measure of their expenses, but have saved their point by exceptions to the rulings of the court in excluding their testimony on the issue of expenses. Under his plea, appellee could recover only one-half of the profits of the joint adventure. Appellants tendered evidence showing the actual expenses incurred in handling the property; for instance, they offered testimony that it cost them, by expenses paid an exploration company and by a bonus paid two other men who were interested in the exploration, the sum of $70,000, and that this sum of money was in fact paid by them as a necessary expense incident to the discovery of this oil field. The pleadings did not raise the issue of "reasonable and necessary charges incident to the transaction," submitted by the charge given in connection with question No. 5. As we understand the evidence, the 200 acres of land in controversy was a part of the oil field found by the exploration company, that Cockburn was compelled to have this 200 acres to complete his deal, and this 200 acres was acquired and handled, not as a separate transaction, but as a part of the 1,226.76 acres of land. Constituting a part of the oil territory, this 200 acres should

bear its proportional part of the discovery cost. Appellants were compelled to account to the exploration company, not on the basis of 1,025.76 acres, but on the basis of a block of land consisting of 1,226.76 acres. There was no issue made by the pleadings, as stated above, that Cockburn, in contracting to pay appellee one-half the profits, intended to exclude this 200 acres, and the expenses incident thereto, from the block of 1,226.76 acres. No issue was made by the pleadings or the testimony that this 200 acres should not bear its proportionate part of the discovery cost.

Appellants are in error in their contention that appellee should be charged with the proportional cost of 103 acres transferred to the Humble Oil & Refining Company, subsequent to the transfer of the leases on the 1,226.76 acres. The leases on the 103 acres form no part of the consideration of $225,000 paid for the 1,226.76 acres.

■ The court did not err in refusing to receive evidence of the good character of Cockburn for honesty and fair dealing. Appellee pleaded a contract against Cockburn whereby he was to pay one-half the profits in the land, and sustained his allegations by proof. By his answer Cockburn denied the contract pleaded by appellee, and offered proof in support of his allegations. This statement does not afford basis for proof of reputation. Grant et al. v. Pendley et al. (Tex.Com.App.) 39 S.W. (2d) 596, 78 A. L. R. 638; Fort Worth Well Machinery & Supply Co. v. Waggoman et al. (Tex.Civ.App.) 52 S.W.(2d) 306; Waggoman v. Fort Worth, etc., Co. (Tex.Sup.) 76 S.W.(2d) 1005; St. Louis, S. F. & T. R. Co. v. Barr (Tex.Civ.App.) 67 S.W.(2d) 1063.

What we have said above relates to the appeal of Cockburn and Cockburn Oil Corporation. There was no evidence of a joint adventure or partnership between appellee and Smith & Gates, Inc., and Erwin W. Smith and C. E. Gates. As we construe appellee's petition, there was no charge of partnership or joint adventure against these last-named appellants, but his action against them was based on "conspiracy," which was within the statute of limitation of two years, and was found by the jury's answer to question No. 9.

From what we have said, it follows that the judgment of the lower court must be reversed, and judgment here rendered in favor of Smith & Gates, Inc., and Erwin

W. Smith and C. E. Gates, that they go hence without day and recover their costs. Appellee's judgment against Cockburn and Cockburn Oil Company is reversed and the cause remanded for a new trial unless, within 10 days from this order, appellee tenders the following credits into this court: While the evidence was excluded from the jury the record discloses the profits on the transaction, that is, the $225,-000 received by appellants as a bonus for the lease on the 1,226.76 acres and also shows the actual expenses incurred by them in handling this oil proposition, including the 200 acres in which appellee was interested. If a tender is made by appellee under this order the judgment of the lower court will be affirmed on the basis of one-half of one-sixth of $225,000, less that proportion of the expenses chargeable against the 200 acres.

Reversed and rendered in part; reversed and remanded in part, subject to affirmance on proper remittitur.

### Supplemental Opinion.

In compliance with the suggestion of the court in its opinion filed on the 14th instant, as a condition of affirmance of the judgment in this cause, appellee has filed the following remittitur: "Wherefore, appellee, in conformity with the order of this court, does hereby make a remittitur of one-half of one-sixth of the following items, which were testified to as expenses in said cause by appellants, to-wit: $50,000.00 paid to Southern Royalty Company, successors to North American Exploration Company; $50,000.00 paid to appellants Smith & Gates as their portion of the profits; $10,000.00 paid to A. Birnbaum; $10,000.00 paid to Johannus Schander; $15,574.72 paid to Smith & Gates as leasing expenses; $2,072.26 paid to North American Exploration Company as automobile expenses; Total, $137,646.94, one-twelfth of which amounts to the sum of $11,470.59. We have deducted this sum from the sum of $18,-750.00, which represents one-half of one-sixth of the gross profits; this leaves the amount of the judgment to which appellee is entitled under the order of this court, $7,279.41, and for the purpose of reducing said judgment to said sum of $7,279.41 appellees here enter their remittitur for the sum of $8,553.92 of such judgment, and does direct that execution hereafter to be issued shall be for the balance only of such judgment after deducting the amount hereby remitted, with interest thereon as provided in said decree."

Appellee's remittitur gives appellants credit for all sums paid by them, incident to the joint adventure whereby Humble Oil & Refining Company, for the sum of $225,000, acquired the lease on the several tracts of land referred to in the original opinion. It is, therefore, our order that appellee's remittitur be allowed, and that the judgment of the lower court be reformed and affirmed against appellant Cockburn and Cockburn Oil Corporation, in favor of appellee, W. H. Irvin, in the sum of $7,-279,41, with interest at 6 per cent. per annum from November 7, 1927.

Reformed and affirmed.

### On Rehearing.

The remittitur was ordered in this case on the proportion of 200 acres to 1,200 acres; on appellants' motion this order is corrected making the proportion 200 acres to 1,226.76 acres. This correction in the order of remittitur gives appellants credit for every item of expense incurred by them, as pleaded in their answer to appellee's cause of action and as claimed by them in a written statement filed with the court subsequent to the filing of our original opinion.

In all other respects, appellants' motion for rehearing is overruled.