## PHILLIPS v. CARTER et al.

### No. 4961.

Court of Civil Appeals of Texas. Amarillo.

Dec. 19, 1938.

Rehearing Denied Jan. 23, 1939.

Paul G. Greenwood and Hawthorne Phillips, both of Harlingen, for appellant.

John Q. Adams, of Harlingen, for appellees.

STOKES, Justice.

This suit was filed by appellant, J. B. Phillips, against appellees, Frank Carter and W. W. Johnson, for broker's commissions in the total sum of $3,399.15. Appellant alleged that the defendant, Frank Carter, represented to him that he, Carter, was the owner of 1,045 acres of land in Cameron County, for which Carter had a purchaser at a price which would yield him a profit of $1,000, but that he desired to sell the land under conditions in which he could retain a portion of the oil, gas and mineral rights. It is alleged that Carter represented to appellant that, inasmuch as appellant's brother, A. W. Phillips, was interested in an oil and gas lease on a large tract of land adjoining Carter's property, appellant, no doubt, could negotiate a sale of the 1,045 acres to appellant's brother, A. W. Phillips, and that if appellant would promote such a sale at a price of $10,000 and a reservation of ¾sths of the oil, gas and mineral rights in and under the land, Carter would pay appellant commissions consisting of three notes of $166.40 each, to be executed by the purchaser as part of the purchase price; ⅛th of the mineral rights in the land, and 40% of all other notes or cash received by Carter as profits or commissions upon the sale.

Appellant prayed for judgment against both Carter and Johnson, the latter of whom he designated as trustee, for the amount sued for and foreclosure of an equitable lien on the land and mineral rights, and for general relief.

There was no case made by the testimony against Johnson and he will not be further referred to.

Appellee Carter answered by alleging that he and appellant were each engaged in the real estate brokerage business at Harlingen and that he was acquainted with the owners of the 1,045 acres of land and knew it could be procured at a price upon which he believed it could be sold for a profit. He alleged that he so informed appellant and suggested that if appellant would negotiate a sale of the land to appellant's brother, A. W. Phillips, he would make a satisfactory division with appellant of any profits that may be realized from a purchase of the land from the owners and a sale of it to appellant's brother.

The record discloses that after the conversation between these parties, appellant negotiated with his brother for the sale of the land to the latter, which resulted in a contract of sale being executed between appellee and appellant's brother on the 19th of March, 1937, under which the purchaser agreed to take the land at a price of $10,000, to be paid $2,500 in cash upon approval of the title, and seven notes in the sum of $893 each, due and payable one to seven years, respectively, after date, payable to W. W. Johnson, trustee. These notes were to be secured by a vendor's lien on the land and the balance of the consideration was to be evidenced by three notes in the sum of $166.40 each, payable to appellant, and three notes in the sum of $249.60 each, payable to appellee Carter. These latter notes were to be secured by a deed of trust, presumably a second lien, on the land, numbered 1 to 6, Nos. 1, 3 and 5 payable to appellant, due on or before eight, nine and ten years after date, and Nos. 2, 4 and 6 payable to appellee, to be due eight, nine and ten years after date. The contract further provided that the purchaser, simultaneously with delivery of the deed to him, would execute a non-participating royalty deed conveying to appellee ¾₄₈ths of the oil and mineral rights in the land.

The record shows that the sale contract was not consummated because of a defect in the title to the land which could not be corrected within the time specified and the contract was subsequently cancelled by mutual consent of appellee and the purchaser.

Appellant contends that inasmuch as he procured his brother as a purchaser of the land at a price and upon terms which were acceptable to appellee and a valid and enforcible contract of sale was entered into between them as a result of appellant's efforts to make the sale, he is entitled to the commissions agreed upon regardless of whether the sale was finally consummated or not. Appellee, on the other hand, contends that appellant knew the land did not belong to appellee but belonged to other parties; that the arrangement between them constituted an agreement to use their joint efforts to sell the land to appellant's brother and, inasmuch as the sale was not consummated because of a defect in the title to the land, appellant is not entitled to recover anything of him by virtue of the transaction.

The case was submitted to the court without the intervention of a jury and resulted in a judgment in favor of appellee, denying appellant any relief. Appellant duly excepted to the judgment, gave notice of appeal, and presents the case here upon the theory indicated in the foregoing statement.

Appellant testified in his own behalf to the effect that appellee came to him on the streets of Harlingen about the 10th of March, 1937, and represented that he owned a tract of 1,045 acres of land which he wished to sell and that he believed appellant could negotiate a sale to his brother, A. W. Phillips, stating to appellant that if he would do so he would let appellant make some money. No specific compensation to appellant was discussed at that time, but after appellant had mentioned the matter to his brother and the negotiations were in progress, he and appellee discussed the matter of compensation and agreed that, of any profits that may be made on the deal, appellant should have 40% and appellee 60%. At some time during the negotiations appellee informed appellant of a telegram which the former had received from Benton Land Company of Clinton, Missouri, dated March 6, 1937, in which the Land Company informed appellee that its investor would accept $6,750 net for the land, $500 cash, and the balance in seven notes at 6% interest. He said that, in discussing with appellee the matter of appellant's compensation, he demanded 50% of the commission but that appellee would not agree to that division because other parties were interested in the commission and that the negotiations finally resulted in an agreement between them that appellant should have 40% of the profits and one-third of any portion of the royalty in the mineral rights that may be retained. He said that when the matter was first discussed be-

tween them it was not known how much he would receive for his services because they did not then know what the land would sell for. He said that after the contract between his brother and appellee was executed in which the land was sold for $10,-000, he did not know the exact amount that would have to be "paid to the Company", but that, when the amount was ascertained, the profits were calculated at approximately $2,500, of which he was to receive 40%. He said that appellee told him the Benton Land Company would take $6,500 for the land; that the Company had agreed in the telegram to take that amount and that $6,500 was the price the Benton Land Company demanded. Appellant further testified that the agreement between them was to the effect that, if the deal were consummated for $10,000, he would get 40% of the profits in cash and notes which amounted approximately to $1,250, plus his interest in the mineral rights.

Based upon this testimony, the trial court concluded that the arrangement between appellant and appellee constituted a joint adventure or undertaking between them whereby they would undertake to procure the title to the land from those who owned it at that time, sell it to appellant's brother, A. W. Phillips, and divide the profits of the transaction in the proportions of 40% to appellant and 60% to appellee. He concluded further that, the joint enterprise not being successful and the joint adventurers not being able to consummate the sale because of a defect in the title to the land, the adventure failed and, there being no profits, appellant was not entitled to judgment for any sum against appellee.

■ These conclusions are challenged by appellant and their correctness depends upon whether or not appellant knew that appellee Carter did not own the land but intended to make an effort to procure a deed to it and sell it to appellant's brother for a profit. Appellant contends that Carter told him that he, Carter, owned the land and employed him to procure a purchaser for it, agreeing to pay him as commissions 40% of any profits that may be derived by appellee in the transaction. We think it is apparent from appellant's own testimony that he knew appellee did not own the land, but expected to negotiate for it if a sale could first be negotiated to appellant's brother at a profit. This is apparent from appellant's testimony to the effect that appellee told him the Benton Land Company would take $6,500 for the land. It is further shown by the telegram which appellant testified was shown to him by appellee in which the Benton Land Company informed appellee that its investor would accept $6,750 for the land. It is further shown by the calculation made at numerous times by appellant and appellee when they were discussing the amount of money they would make in the transaction and the record shows that appellant throughout knew he was to receive 40% of the difference between the price which the owners would take for the land and the price for which it should be sold to his brother, A. W. Phillips.

■ Manifestly, if appellant knew appellee did not own the land at the time he solicited appellant's assistance in disposing of it, but that it was owned by other parties with whom negotiations for its purchase would have to be completed, and that a sale to appellant's brother would have to be negotiated and finally consummated, the cash consideration paid, notes executed and a deed executed conveying an interest in the mineral rights to appellee before anything in the nature of commissions or profits would accrue to him, he would not be entitled to collect such commissions or profits unless these transactions were completed. He testified positively that appellee told him he would be entitled to profits equal to $1,250 if the deal were consummated and appellant's brother purchased the land for $10,000. The deal not having been consummated, the land not having been sold to his brother for $10,000 or any other sum, the notes which he was to receive not having been executed, nor any interest in the mineral rights ever having been conveyed to appellee, it follows that appellant was not entitled to a judgment against appellee for any of these items of profit. Griffin v. Reilly et al., Tex.Civ.App., 275 S.W. 242; Thompson v. Duncan, Tex. Com.App., 44 S.W.2d 904; Funk et al. v. Miller, Tex.Civ.App., 142 S.W. 24.

While it is true that the contract of sale was signed by appellee and in it, he was designated as the owner of the land, yet it is plain from the record and the testimony of appellant himself that, before the contract was executed, he knew appellee did not own the land, but expected to have it conveyed to him in order to facilitate the ultimate conveyance to appellant's brother and arrange for the cash, notes and mineral royalties which were to con-

stitute their profits in the transaction. No fraud is alleged nor bad faith shown and, under the facts and circumstances surrounding the transaction, the court below did not err in rendering judgment against appellant.

What we have said disposes of all of the material contentions made by appellant. We have not deemed it necessary to discuss separately the assignments of error and propositions of law urged in the brief, but we have carefully considered all of them and, believing that no reversible error is revealed by the record, the judgment of the court below is in all respects affirmed.